IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RSG, INC., a South Dakota Corporation; R GROUP, INC., an Iowa Corporation; and RANDALL S. GOLDEN, an Individual;<br><br>        Plaintiffs,<br><br>    vs.<br><br>SIDUMP'R TRAILER COMPANY, INC., a Delaware Corporation;<br><br>        Defendant. | **8:06CV507**<br><br>**MEMORANDUM AND ORDER** |

       This matter is before the court on the plaintiffs' motion for summary judgment, Filing No. 346.[1] The plaintiffs, RSG, Inc., R Group, Inc., and Randall S. Golden (hereinafter, collectively, "RSG") move for judgment against Gemini Investors III, L.P., and Gemini Investors IV, L.P. (collectively, "Gemini"). RSG seeks to add Gemini as a party to this action, pierce the corporate veil, and impose liability on Gemini for the judgment rendered in this court against defendant Sidump'r Trailer Company ("Sidump'r") in this action (hereinafter, "the Sidump'r action"). Specifically, RSG seeks to recover the sum of $104,000.00 that remains owing on the judgment; seeks judgment for $50,000.00 in director's fees; and seeks a judgment for attorneys' fees in the amount of $906,954.31. The court heard oral argument on the motion on May 21, 2012.

---

       [1] In an earlier order, after a telephone conference with the parties, the court set a briefing schedule and scheduled an evidentiary hearing on RSG's motion to pierce the corporate veil and the motions filed in response. See Filing No. 341. The court informed the parties that it would treat the matter as a motion for summary judgment. *Id*. RSG filed a motion for summary judgment that essentially subsumes its earlier motion. Filing No. 346. This order resolves the issues raised in the other pending motions. Accordingly, the following motions are denied as moot: Filing No. 326, RSG's motion to pierce the corporate veil; Filing No. 329, Gemini's motion to strike RSG's motion; Filing No. 330, Gemini's motion to dismiss RSG's motion; and Filing No. 338, RSG's motion for hearing. The parties later agreed to submit RSG's motion to pierce the corporate veil on the record.

RSG argues that from the inception of Sidump'r on January 10, 2006, to the appointment of a receiver on November 20, 2008, Gemini, through the actions of Michael Sharp, Molly Simmons and David Millett, operated Sidump'r's business in disregard of the corporate entity, and operated Sidump'r as its agent and instrumentality and as a façade for its own personal dealings. RSG argues that Sidump'r was presumptively insolvent under the Nebraska Uniform Fraudulent Transfer Act, Neb. Rev. Stat. §36-703(b), at the time it made payments for services to Michael Sharp and payments of interest to Gemini. RSG asserts that "Gemini, as the alter ego of STC, appears to hold the vast majority of [Sidump'r's] assets" and that Gemini induced Sidump'r to file claims against RSG, which it characterizes as frivolous and extortionate. RSG argues it is entitled to an award of attorneys' fees and litigation costs for defending against those claims. It also argues that Gemini completely dominated Sidump'r to the extent that Sidump'r had no separate mind, will or existence of its own and that such control proximately caused RSG to sustain attorneys' fees and costs. Alternatively, it argues that that Gemini is liable for common-law malicious prosecution and the resultant attorneys' fees and costs.

Gemini argues that RSG has not sustained its burden of showing that disregard of the corporate entity is warranted in this case.

**I. Background—Facts**

This motion is an outgrowth of two lawsuits between the parties filed in connection with the sale of a business, Sidump'r Trailer Corp. ("Sidump'r"), that were litigated in this court in April 2010. Essentially, RSG (the seller) alleged breach of contract and misrepresentation by Sidump'r (the buyer) and Sidump'r counterclaimed for fraud and breach of warranty in this case. See Filing No. 262, Order on Pretrial

Conference at 3-18. Gemini is an investor in Sidump'r. In a related case, Gemini sued RSG in federal court in Minnesota for alleged misrepresentations and fraud in connection with the transaction. *Gemini Investors III, L.P., et al. v. RSG, Inc., et al.*, No. 8:09CV105 (hereinafter, "the Gemini action"), Filing No. 1, Complaint. The Gemini action was subsequently transferred to this court. *See id.*, No. 8:09CV105, Filing No. 26, Memorandum and Order. The parties later entered into a stipulation in the Gemini action, agreeing that if Sidump'r did not prevail on its counterclaims in this action, Gemini would dismiss its claims against RSG in the Gemini case. *Id.*, Filing No. 68, Stipulation at 2; *see also id.*, Filing No. 102, Memorandum and Order at 1. In return, RSG agreed to withdraw its motion to consolidate the two actions. *See* Filing No. 178, Order in 8:06CV507.

This action proceeded to trial to the court and a jury from April 6, 2010, to April 16, 2010. The relevant facts are set forth in the court's earlier orders in those cases and need not be repeated at length here. *See RSG v. Sidump'r*, No. 8:06CV507, Filing No. 312, Memorandum and Order; Filing No. 301, Memorandum and Order at 8-24. Briefly, the evidence adduced at trial showed that RSG sold a business that manufactured and sold trailers to Sidump'r for over twelve million dollars on January 10, 2006. The company continued to operate for several years, but eventually went into receivership. *See id.* at 8-16.

At the close of evidence, both parties moved for judgment as a matter of law. The court found that RSG was entitled to a judgment in its favor on its claim of entitlement to funds held in escrow and its claim for delivery of two Sidump'r trailers valued at $104,000.00. Filing No. 301, Memorandum and Order at 4. The court declared that RSG was entitled to the $600,000.00 held in escrow and entered

3

judgment in favor of RSG for $104,500.00, plus interest, for the trailers that Sidump'r failed to deliver to RSG. *Id.* at 35; Filing No. 302, Judgment. The court ruled in favor of Sidump'r as a matter of law and dismissed RSG's claims for breach of contract regarding failure to provide space and failure to develop a Tridump'r trailer. *See* Filing No. 301, Memorandum & Order at 4. The court further dismissed all but two of Sidump'r's breach of warranty claims and all but one of Sidump'r's fraudulent misrepresentation claims. *Id.*; *see* Filing No. 296, Special Interrogatories and Verdict Form. Those claims (breach of the warranty of conformity with federal under-ride regulations and the warranty of no material adverse changes in liabilities and the misrepresentation or concealment of significant cracking problems) were submitted to the jury and the jury found in favor of RSG on all three claims. Filing No. 301, Memorandum & Order at 4; Filing No. 296, Special Interrogatories at 1-2.

The court also found that neither party could recover on its equitable claims. Filing No. 301, Memorandum and Order at 34. In ruling on the equitable claims, the court stated "this was an arms-length transaction between sophisticated businessmen and the court finds both parties received the benefit of their bargain." Filing No. 301, Memorandum & Order at 34. Further, the court found that Sidump'r was "estopped from asserting any claim for breach of fiduciary duty by Randy Golden in connection with the employee salary dispute by its own breach of fiduciary duties to Golden as a director by excluding him from meetings of the managing directors." *Id.* The record shows that RSG did not assert a claim for unpaid director's fees at the trial, nor did it seek taxation of costs or recovery of attorneys' fees. See Filing No. 262, Pretrial Order at 3-6.

RSG then moved to amend the court's findings. Filing No. 303, Motion to Amend. It asked the court to make additional findings on RSG's equitable estoppel

4

defense as an alternative ground for the court's dismissal of Sidump'r's counterclaims. *See id.* at 4. RSG proposed that the court make the finding that Molly Simmons had told Randy Golden that Sidump'r had no intention of making a claim against RSG, while at the same time Sidump'r was assembling information to make a claim, and that she had made the statement in her "dual capacities as the acting Chairman of the Board of Sidump'r and as the authorized representative of Gemini." *Id.* at 2-4. Sidump'r opposed the motion, arguing that RSG had essentially copied the factual allegations of a proposed counterclaim it had filed in the Gemini litigation in an attempt to gain an advantage in that case. Filing No. 305, Sidump'r Brief at 3-4. The court declined RSG's invitation to amend its findings, stating "[e]quitable relief is generally appropriate only in the absence of adequate legal relief. The court declines to revisit the issue." Filing No. 312, Memorandum & Order at 2.

Shortly after the judgment was entered against Sidump'r in this case, RSG filed a purported counterclaim in the Gemini action, alleging malicious prosecution and tortious interference with a contract. *See* Gemini action, No. 8:09cv105, Filing No. 72, Counterclaim. It also sought to pierce the corporate veil and sought $967,655.30 in attorneys' fees incurred in defending against Sidump'r's allegedly frivolous counterclaims in this action. *Id.* at 3, 6. Further, it alleged that Gemini had an 80% ownership interest in Sidump'r and argued that Gemini caused Sidump'r to breach the contracts at issue and to make fraudulent conveyances to Gemini when it knew Sidump'r was insolvent. *Id.* at 12.

The court found that RSG's counterclaim was foreclosed by its earlier stipulation, finding that "[i]mplicit in [RSG's agreement to withdraw its motion to consolidate the cases exchange for Gemini's agreement to be bound by the findings in the Sidump'r

action] is the understanding that the Sidump'r litigation would resolve all of the issues involved in the 'nucleus of operative fact' that is at the heart of the litigation." Gemini action, No. 8:09CV105, Filing No.102, Memorandum & Order at 6. This court further stated that "RSG essentially agreed to place all of its eggs in the Sidump'r litigation basket," and characterized its counterclaims as a "second bite at the apple." *Id.* The court noted that "[t]o the extent that either "piercing the corporate veil" or a determination of alter ego status are necessary, they can be pursued in the Sidump'r litigation. Also, RSG's fraudulent conveyance allegations are more appropriately pursued in a forum such as bankruptcy court or to a receiver." *Id.* at 7. RSG did not appeal that decision.

There is no dispute that RSG has recovered the $600,000.00 held in escrow. *See* Filing No. 380, Gemini's Brief at 4. However, RSG's subsequent attempts to collect on the judgment for $104,000.00 for the undelivered trailers were unsuccessful. *Id.;* Filing No. 319, Order granting leave to conduct a debtor's exam; Filing No. 325, Order quashing subpoena and cancelling debtor's exam. The record shows that the $104,500.00 judgment against STC remains unsatisfied and that Sidump'r has no assets in its name that could be subject to execution, levy or sale. Filing No. 358, Declaration of Randy Golden ("Golden Decl.") at 7.

The trial record, the evidence submitted in connection with this motion, and the parties' statements of undisputed facts establish the following facts. *See, e.g.*,Filing No. 369, RSG's Brief at 7-33, Statement of Undisputed Facts; Filing No. 380, Gemini's Brief at 4-36, Statement of Undisputed Facts; Filing No. 383, RSG's Reply Brief at 1-5. Sidump'r Holdings, Inc. ("Holdings"), was formed by two investment companies, Gemini Investors and Timepiece Capital, to serve as the holding company for the leveraged

acquisition of RSG's trailer business through a newly-formed, wholly-owned subsidiary, named Sidump'r Trailer Company.  *See* Filing No. 369, RSG's Brief, Statement of Undisputed Facts at 8, 13; Filing No. 380, Gemini's Brief, Statement of Undisputed Facts at 6.  Gemini is in the business of investing capital in small, privately-held companies.  Filing No. 347, Index of Evid., Attachment 1, Deposition of Michael Monroe ("Monroe Dep.") at 4.  Timepiece Capital is also in the business of acquiring a controlling interest in small private companies in conjunction with other institutional investors.  *Id.*, Attachment 2, Deposition of Michael Starkle at 3.  Gemini Investors III, L.P., and Gemini Investors IV, L.P., are Delaware limited partnerships and investment funds that are managed by Gemini Investors.  *Id*., Attachment 1, Monroe Dep. at 3.

On January 10, 2006, the holding company acquired all of the issued and outstanding shares of common stock of the newly formed business, which then became a wholly owned subsidiary of the holding company.  Filing No. 369, RSG's Brief at 13; Filing No. 380, Gemini's Brief at 5-6.  The two Gemini investment funds invested approximately $4.75 million dollars in the holding company to finance the purchase of the business.  *See* Filing No. 306, Index of Evid., Ex. C., Minnesota District Court Memorandum Opinion and Order at 2; Gemini litigation, No. 8:09CV105, Filing No. 26, Memorandum Opinion and Order at 2.  Sometime thereafter, the Gemini funds guaranteed another approximately $1.2 million on a revolving line of credit.  *Id.*

Patriot Capital Funding is Sidump'r's lender.  Filing No. 380, Sidump'r Brief, Statement of Undisputed Facts at 5.  Gemini owned both preferred and common stock in Sidump'r after the acquisition.  *Id.* at 7-8. Preferred shares are a financial instrument that has characteristics of both debt and equity.  *See* Filing No. 381, Index of Evid., Ex.

7

5, Declaration of David Millet ("Millet Decl.") at 1.  Gemini owned both preferred and common stock in Sidump'r.  Filing No. 380, Gemini Brief at 7.

David Millet, Michael Monroe, and Molly Simmons of Gemini were all on Sidump'r's Board of Directors, as were Mike Starkle and Ken Greenberg of Timepiece Capital.  *Id.* at 5.  Michael Sharp of Delray Partners is a professional business consultant who specializes in leading firms through performance improvement initiatives, turnarounds, restructurings, mergers and acquisitions, and high-speed growth experiences, as well as advising equity owners and executives.  Filing No. 381, Index of Evid., Ex. 3, Declaration of Michael Sharp ("Sharp Decl.") at 1.  In his declaration, he states that he was retained by the Sidump'r Board of Directors.  *Id.* Millet also states that Sharp was hired by Sidump'r, not Gemini.  Filing No. 381, Index of Evid., Ex. 5, Declaration of David Millet at 2.  Sharp provided reports and updates to Gemini as the equity owner of Sidump'r.  Filing No. 380, Gemini's Brief, Statement of Undisputed facts at 8.  He performed numerous tasks and functions while employed to help Sidump'r in the turnaround.  Filing No. 381, Index of Evid., Ex. 3, Sharp Decl. at 2.  The record shows Sharp did substantial work for the company.  *See id.*  All directors stopped receiving director's fees and Gemini stopped receiving management fees in an effort to maintain Sidump'r's liquidity.  *Id.* at 3.

The evidence shows that Gemini was not paid any return on its investment but only interest payments on its subordinate loans in 2007.  *Id.*  The record shows that Sidump'r entered into receivership under Nebraska law on November 8, 2008.  *See* Filing No. 199, Index of Evid. in Support of Motion for Summary Judgment, Attachment 4 at 18-35, *Patriot Capital Funding, Inc. v. Sidump'r*, Case No. CI 08-86, Order Appointing Receiver (Doc # 199-4, Page ID # 3074); Filing No. 368, Index of Evid.,

8

Golden Decl., Ex. 38, Order at 8. The receiver, Luke Nothwall, then operated Sidump'r's business, filing periodic operating reports that were approved by the Pierce County District Court. *Id.* at 7. The receiver approved payments to Michael Sharp for services rendered. See Filing No. 361, Index of Evid., Golden Decl., Ex. 11vi at 17, Cash Disbursements Journal. The jury returned its verdict in favor of RSG in this action on April 16, 2010. Filing No. 296. RSG did not file a petition to intervene in the receivership proceeding. Filing No. 368, Index of Evid., Golden Decl., Ex. 38, *Patriot Capital Funding, Inc. v. Sidump'r*, Case No. CI 08-86, Pierce County District Court Order at 4. On July 9, 2010, the receiver sold substantially all of Sidump'r's assets and Douglas Holdings, LLC, purchased Sidump'r's assets and real property for $767,000.00. Filing No. 368, Golden Decl., Ex 38, Order at 7. Sidump'r's remaining assets, after payment of professional fees, were disbursed in accordance with the receiver's motion to approve final accounting. *Id.* The Pierce County District Court overruled RSG's objection to "the proposed discharge of the receiver and SiDump'r, including a release of future liabilities to creditors," stating that there had not been "a claim filed in this Court that any other person or entity is entitled to the funds the Receiver currently holds as a result of the sale [of] SiDump'r assets and real estate." *Id.* at 5-6. In an order dated December 14, 2010, the District Court for Pierce County, Nebraska, found that

> RSG is a creditor of SiDump'r and received notice of the order appointing the receiver and notice of claims bar date along with all other creditors, it is not a party to this litigation. RSG received this notice on or about December 10, 2008. RSG has not filed a petition to intervene, nor sought permission from this Court to become a party to this litigation. If RSG was a party who might have had an interest in the possession or the immediate custody of property or assets of SiDump'r, it clearly had the opportunity to previously object or insert itself into the litigation to become a party or to file a claim. It did not.

*Id.* at 4. Accordingly, the court discharged the receiver and approved the final accounting of the receivership on December 14, 2010. *Id.* at 8-9.

## II. Law

Proceedings seeking disregard of corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions. *Christian v. Smith*, 759 N.W.2d 447, 461 (Neb. 2008). Under Nebraska law, "a corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears" and "'[a] court will disregard a corporation's identity,' or pierce the corporate veil, 'only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another.'" *Howsden v. Roper's Real Estate Co.*, 805 N.W.2d 640, 645-46 (Neb. 2011). Courts are "not at liberty to disregard the corporate form in the absence of circumstances that would justify invoking equitable power." *Id.* at 647. A plaintiff seeking to pierce the corporate veil must allege and prove that the corporation was under the actual control of the shareholder and that the shareholder exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights. *Christian v. Smith*, 759 N.W.2d at 462. A plaintiff seeking to impose liability for a corporate debt on a shareholder has the burden to show by a preponderance of the evidence that the corporate identity must be disregarded to prevent fraud or injustice to the plaintiff. *Id.* Some of the relevant factors in determining whether to disregard the corporate entity on the basis of fraud are (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of

10

the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.  *Id.*

The first element of the test, inadequate capitalization, means capitalization very small in relation to the nature of the business of the corporation and the risks entailed. *Id.*  Inadequate capitalization is measured at the time of incorporation.  *Id.*  A corporation that was adequately capitalized when formed but that has suffered losses is not necessarily undercapitalized.  *Id.*  Undercapitalization presents a question of fact that turns on the nature of the business of the particular corporation.  *Id.*  The second factor used to determine whether a corporation's identity should be disregarded is whether the corporation was insolvent at the time the debt was incurred.  *Id.* at 463.  A corporation is insolvent if it is unable to pay its debts as they become due in the usual course of its business, or if it has an excess of liabilities of the corporation over its assets at a fair valuation.  *Id.*  Whether a corporation is insolvent is usually a question of fact.  *Id.*

Similarly, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder in circumstances where necessary to prevent fraud or injustice.  In *Medlock v. Medlock*, 642 N.W.2d 113, 124 (Neb. 2002).  Among the relevant factors for determining whether to declare a corporate entity a mere alter ego and disregard it include the diversion of corporate funds or assets for personal use and whether personal business dealings of the shareholder and operations of the corporation are carried on in disregard of the corporate entity.  *Id.*  "The separate corporate existence of parent and subsidiary or affiliated corporations will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another

11

corporation." *Hayes v. Sanitary & Improvement Dist. No. 194, 244 N.W.2d 505, 511 (Neb. 1976)*.

Under the Nebraska Uniform Fraudulent Transfer Act, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Neb. Rev. Stat. § 36-706(a). For an insider, "[a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent." Neb. Rev. Stat. § 36-706(b). The remedy for a fraudulent conveyance is set out in Neb. Rev. Stat. § 36-708:

> (a) In an action for relief against a transfer or obligation under the Uniform Fraudulent Transfer Act, a creditor, subject to the limitations in section 36-709, may obtain:
>
>   (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> . . . .
>
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

Neb. Rev. Stat. § 36-708.

Under Nebraska law, a party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when the Nebraska Supreme Court has recognized and accepted a uniform course of procedure for allowing attorney fees. *Eikmeier v. City of Omaha, 783 N.W.2d 795, 797-98 (Neb. 2010)*. Assessment of

attorneys' fees as a sanction is permitted under the court's inherent powers if a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted). Because of the potency of inherent powers, they must be exercised with restraint and discretion. *Id.* at 44.

## III. Discussion

The court finds that RSG has not sustained its burden to show that piercing the corporate veil is appropriate, that Gemini is the alter ego of Sidump'r, or that payments made to Gemini and/or Michael Sharp/Delray Partners were fraudulent transfers. Disregard of corporate structure is warranted only to prevent unfairness, fraud, or injustice. This action does not present circumstances that justify invocation of the court's equitable powers.

RSG has not sustained its threshold burden of showing the unfairness or injustice that triggers disregard of the corporate entity. As noted in the court's earlier order, this was an arms-length transaction between knowledgeable and sophisticated businessmen and each party received the benefit of its bargain. Conversely, each party suffered the consequences of any risks it knowingly took in connection with the transaction. RSG received over twelve million dollars from the sale of the business. The Gemini funds received interest payments pursuant to a contract, but lost all or part of its investment to secured or priority creditors in the receivership. Although the interactions between the parties may not have been a model of ethical business practice, any alleged civil wrongs or misconduct were litigated and resolved in the litigation. There was evidence of misconduct on both sides. Neither party's claims can

be said to be frivolous or contumacious. This is not a case in which the court must exercise equitable powers to prevent unfairness or injustice.

RSG further failed to show that Sidump'r was grossly undercapitalized at its inception or insolvent at the time it made the transfers at issue. Notably, it failed to present expert testimony to establish that the audited financial statements and balance sheets at issue showed such undercapitalization or insolvency. Nor did it show that the preparation of the financial statements was improper under applicable accounting standards and practices.[2] The determination of such accounting impropriety is a question that requires technical and specialized knowledge. It is not within the court's general knowledge and experience to evaluate the import of the particulars of complicated corporate financial statements. RSG did not prove that the audited financials misstated inventory, cost of goods sold, operating cash flow, EBITDA,[3] valuation, goodwill, or other components of financial accounting and management. The need for expert testimony in this case is analogous to the need for expert testimony on the standard of care in a professional malpractice case. RSG showed only that there were accusations of impropriety, infighting, animosity and recrimination among the parties. The evidence may show mismanagement, inconsistency, marginal negligence or creative accounting, but the court cannot evaluate that evidence in the context of a leveraged transaction without expert testimony.

---

[2] Generally, expert testimony is required to establish the relevant standard of care applicable to a professional. See, e.g., Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) (involving a medical doctor); Diversified Graphics, Ltd. v. Groves, 868 F.2d 293, 296 (8th Cir. 1989) (involving a computer systems consultant). Establishing that an accounting practice or method is inconsistent with GAAP requires expert testimony. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1421 (3d Cir. 1997); see also In re Westinghouse Sec. Litig., 90 F.3d 696, 709 n.9 (3rd Cir.1996) (characterizing GAAP proof as a battle of experts); Florida St. Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 666 (8th Cir. 2001); Rumsfeld v. United Technologies Corp., 315 F.3d 1361, 1369 n.6. (Fed. Cir. 2003) (stating that expert testimony can be considered to establish the requirements of GAAP).

[3] EBITDA stands for "Earnings before interest, taxes, depreciation and amortization."

RSG made no showing that the conduct of Sidump'r's executives and Board of Directors, including the Gemini executives, resulted in any unfairness and injustice beyond that found in connection with any failed business venture. The record shows that Gemini is a legally separate entity from Sidump'r, despite their corporate kinship, and there is no equitable basis in this record to justify piercing the corporate veil or treating Sidump'r and Gemini as alter egos. This business purchase was a highly leveraged transaction and all of the parties knew it. The evidence shows only that Sidump'r suffered a business reversal likely due, in part, to the economic downturn.

RSG's failure to prove Sidump'r's insolvency dooms RSG's fraudulent transfer claims as well. The record shows that Sharp worked as a consultant to Sidump'r. The payment of Sharp's bills or claims by the receiver is dispositive of the issue. Moreover, the record shows that Sharp performed services to Sidump'r that were of value to the company, although ultimately unsuccessful. The record includes numerous reports generated by Sharp as a consultant. The fact that he reported to principals of Gemini is of no consequence since they were on the Board of Sidump'r and Gemini was an equity investor.

RSG's threshold showing of injustice is further hampered by its failure to present its claims to the receiver. The jury had rendered its verdict before the receivership was closed.[4] To rule in RSG's favor on this motion would achieve the result of effectively putting RSG ahead of other creditors in the distribution of Sidump'r's assets.

---

[4] Although judgment on the verdict was not rendered until other outstanding issues were resolved, courts have generally held that a "debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or of the judgment, which fixes the status and rights of the parties." *Dominguez v. Eppley Transp. Services, Inc.*, 763 N.W.2d 696, 703 (Neb. 2009).

RSG acknowledges that it has no statutory basis or uniform course of procedure as authority for an award of attorneys' fees—it relies only on the court's inherent powers. This case does not involve the sort of contumacious, vexatious, oppressive conduct that justifies the invocation of the court's equitable powers. Nor can the court say that Gemini's actions were taken in bad faith. Sidump'r asserted claims of sufficient substance to get to a jury and Gemini agreed to be bound by the jury's findings. The fact that the jury found in favor of RSG on the claims does not mean the claims were frivolous. As noted, neither party was blameless in this matter. Accordingly, the court finds there is no basis for an award of attorneys' fees in this case.

IT IS HEREBY ORDERED:

1. RSG's motion for summary judgment (Filing No. 346) is denied.

2. The following motions are denied as moot in light of this disposition: RSG's motion to pierce the corporate veil (Filing No. 326), Gemini's motion to strike RSG's motion (Filing No. 329), Gemini's motion to dismiss RSG's motion (Filing No. 330), and RSG's motion for a hearing (Filing No. 338).

3. This action is dismissed.

DATED this 27th day of September, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge